**Bruno BLAZINA**

v.

**E. P. BOUCHARD, District Director of Immigration and Naturalization Service, New Jersey, Appellant.**

**No. 13240.**

United States Court of Appeals Third Circuit.

Argued Oct. 6, 1960.

Decided Feb. 2, 1961.

---

Raymond W. Young, Asst. U. S. Atty., Newark, N. J. (Chester A. Weidenburner, U. S. Atty., Newark, N. J., on the brief), for appellant.

Robert J. Carluccio, Hoboken, N. J., for appellee.

Before BIGGS, Chief Judge, and HASTIE and FORMAN, Circuit Judges.

BIGGS, Chief Judge.

This is an appeal from an order of the United States District Court for the District of New Jersey permanently enjoining the District Director of the Immigration and Naturalization Service from deporting the appellee pursuant to a deportation order issued by the Service. Briefly, the facts are these. The plaintiff-appellee, Bruno Blazina, a 22-year-old Yugoslav national, entered the United States in August, 1957 as a non-immigrant seaman pursuant to Section 1282, Title 8 U.S.C.A. providing for conditional permits to land for a period not exceeding 29 days. On December 19, 1957, Blazina having remained in the United States for a longer period than authorized, the Immigration and Naturalization Service ordered him to appear on Decem-

ber 26, 1957 and show cause why he should not be deported. At this time Blazina was found deportable and was granted the right of voluntary departure subject to an alternative order that he was to be deported if he failed to depart within a specified time. Blazina did not leave the United States and the order of deportation became effective.

On January 27, 1958 Blazina applied to the Attorney General for a stay of deportation pursuant to Section 243(h) of the Immigration and Nationality Act of 1952, 66 Stat. 212, as amended, 8 U.S. C.A. § 1253(h),[1] asserting that if returned to Yugoslavia he would be "persecuted and prosecuted" because of his Roman Catholic faith, his belief in capitalism and in a democratic form of government, and his open disavowal of communistic ideology. He did not allege that he was subject to "physical persecution" which is the only circumstance under which the Attorney General is authorized to withhold deportation under Section 243(h).

On November 26, 1958, a hearing in which Blazina was represented by counsel of his own choice was had on this application before a Special Inquiry Officer. At this hearing Blazina did contend that he would be subject to physical persecution if deported to Yugoslavia. In substance, he asserted three reasons why

the Attorney General should conclude that the Yugoslavian authorities would persecute him physically on his return. First, Blazina called attention to the fact of the communist government's general hostility toward religious beliefs and practice, and alleged that he was a practicing Roman Catholic who in good faith follows the tenets and precepts of his religion. When queried as to the precise sanctions he would be subjected to, Blazina testified that "[O]ne that works has complications" and that "those that go to church and worship over there are looked down upon."[2] Second, he asserted that if deported he would "be jailed for about three months and then later on it would be very difficult * * * to acquire a position." When asked "Upon what basis would your imprisonment and further difficulty emanate from?", he replied, "Because I fled from Yugoslavia, and those who do that are punished." The record is sparse on this point but the most reasonable inference would seem to be that the three months prison term referred to would be punishment for desertion of his vessel. Third, Blazina testified to the effect that his very act of defecting coupled with the anti-communist statements that he had made while in this country would in themselves cause his physical persecution on his return to Yugoslavia.[3] At no point did

1. Section 243(h) provides: "The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to physical persecution and for such period of time as he deems to be necessary for such reason."

2. The testimony relevant to this contention was as follows:
"Q. With reference to your religious beliefs, would you state whether or not you are free to worship your faith in Yugoslavia? A. One that works has complications."
"Q. Do you have freedom of worship in Yugoslavia, generally? A. Only those who are not employed for the Government are allowed, and those who are working for the Government have no privileges and are not allowed."
"Q. Well, the question I ask you now is—is there freedom of worship—could

you worship freely in Yugoslavia whether you are a Catholic or any other denomination? A. I still maintain that those employed with the authorities have no privileges and others are permitted."
"Q. Compared to the freedom that you have here to worship, would you say that the same freedom applies in Yugoslavia to a person who is not employed by the Government? A. No, not the same, because those that go to church and worship over there are looked down upon.
"Q. Do you mean, would you say then that the Government looks with disfavor upon any religious beliefs in Yugoslavia? A. Yes, they do not recognize worship."

3. The testimony relevant to this contention was as follows:
"Q. Well, in what manner then do you insist that you would be persecuted if you were returned to Yugoslavia? A. Be-

Blazina assert, however, that he had openly expressed any anti-communist sentiment while in Yugoslavia or on board ship or that he had engaged in any type of political activity tending to show opposition to the present Yugoslavian government or its political philosophy.[4]

On the basis of the testimony just summarized the Special Inquiry Officer recommended that the application be denied, concluding that Blazina had failed to establish "by reasonable and probative evidence that he would be subjected to physical persecution if returned to Yugoslavia." On December 31, 1958 the Regional Commissioner ordered that the application be denied stating that in his opinion Blazina would not be subject to physical persecution if deported.

The suit at bar was filed by Blazina on September 25, 1959, seeking a "permanent injunction" restraining the District Director of the Immigration and Naturalization Service of New Jersey from deporting him to Yugoslavia. It is alleged in the complaint that the action of the Attorney General in denying the relief sought by Blazina was arbitrary and capricious and that Blazina would be subject to physical persecution if deported to Yugoslavia. Affidavits were filed, the contents of which need not be detailed here. It is sufficient to state that they set out with sufficient clarity and correctly the events which preceded the filing of the suit. On October 9, 1959, upon the whole record of the proceedings had before the Special Inquiry Officer and the pleadings, the District Director moved for summary judgment under Rule 56(b), Fed.R.Civ.Proc., 28 U.S.C. The court below concluded that there was no sound basis in law or in fact for the Attorney General to refuse to grant Blazina the dispensation authorized by Section 243 (h) and on February 11, 1960 granted a permanent injunction restraining Blazina's deportation. The appeal of the District Director followed on April 4, 1960, and the case came on for argument in this court on October 6, 1960. Between the date of the taking of the appeal and the date of the argument Blazina who had volunteered for the draft, was inducted into the Armed Forces of the United States.

The District Director contends that the District Court erred in that it exercised independent judgment on a matter that was committed by Congress to the discretion of the Attorney General. We agree with this contention. The predecessor of Section 243(h) which was enacted in 1952, was Section 20 of

cause I fled from there and I know that those who return are punished.

"Q. However, would you be punished because you fled or because you are opposed to the Yugoslav government? A. Because I do not care for the Communist party."

"Q. Why would you be persecuted because you don't care for the Communist party, if as you have said you have never disclosed to anyone the fact that you do not care for it or are opposed to that party? A. The fact that I fled is proof enough that I did not care for the Communist regime.

"Q. So that the sole reason in essence that you have for believing that you would be persecuted is the fact that you fled and the possible indication that by reason of your having fled you have indicated disapproval of the Communist government in Yugoslavia. Is that right? A. Yes, that is correct."

4. The testimony relevant to this point was as follows:

"Q. Have you ever spoken against the communist form of government or Yugoslav form of government to any group or any individual? A. No, I did not because I would fear exposure.

"Q. On board the ship when you came to the United States did you have any difficulty because of the fact that you are opposed to the Yugoslav form of government, or you indicated in some way that you are opposed to it? A. No, I did not because I feared then they wouldn't allow me abroad—to go ashore."

"Q. Have you ever been in any way politically active? A. We just spoke against the communistic regime to our friends in school but not openly.

"Q. You mean just among the intimacy of the people you trusted you might have commented against the communist regime; is that what you mean? A. Yes, that's correct.

"Q. Did you ever hold any political office of any kind or were you ever prominent in any way, politically? A. No."

the Immigration and Nationality Act of 1917, as amended, 64 Stat. 1010 (1950) which provided that "[N]o alien shall be deported * * * to any country in which the Attorney General shall find that such alien would be subjected to physical persecution." Section 243(h) vests in the Attorney General authority to withhold deportation if "in his opinion" the alien would be subjected to physical persecution. The 1952 changes are significant. They make clear that a decision whether an alien would be physically persecuted on return to his native country was intended by Congress to be committed solely to the judgment of the Attorney General. See United States ex rel. Dolenz v. Shaughnessy, 2 Cir., 1953, 206 F.2d 392, 394. This is not to say, of course, that an applicant has no rights under the statute. An applicant has a right to have his application considered. United States ex rel. Dolenz v. Shaughnessy, supra, at page 395; cf. Jay v. Boyd, 1956, 351 U.S. 345, 353, 76 S.Ct. 919, 100 L.Ed. 1242. Moreover, such consideration must be given in conformity with the pertinent regulations promulgated by the Attorney General himself. Cf. United States ex rel. Accardi v. Shaughnessy, 1954, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681. Procedural due process must be afforded the applicant at all times. United States ex rel. Leong Choy Moon v. Shaughnessy, 2 Cir., 1954, 218 F.2d 316, 318. Moreover an application may not be denied arbitrarily or capriciously or for reasons that evince a complete disregard of the law and the facts. Cf. Dabrowski v. Holland, 3 Cir., 1958, 259 F.2d 449 and McLeod v. Peterson, 3 Cir., 1960, 283 F.2d 180.

Blazina does not contend that the Attorney General did not consider his application, that the regulations were not followed or conformed with,[5] or that he was denied procedural due process. Indeed, it appears that the appellee's application was given thoughtful consideration and that he had a full and fair hearing in which he was represented by counsel of his own choosing. The assertion is made, however, that the decisions of the Special Inquiry Officer and of the Regional Commissioner were arbitrary and capricious. We are of the view that these decisions were well within the terms of the statute and that the District Court, in substituting its judgment for that of the administrative officers, was clearly in error.

■ Before the Attorney General may grant relief under Section 243(h) it must be shown to his satisfaction that, if deported, the alien would be subject not only to persecution, but to physical persecution. Blazina's testimony affords no basis for concluding that his religious beliefs would cause him to be subjected to such sanctions in Yugoslavia. At worst, it appears that he will be "looked down upon" and will encounter some "complications". That Blazina may suffer even these consequences at the hands of his government merely because of his religious practice and belief is deplorable. The repugnance of such a governmental policy to our own concepts of religious freedom cannot, however, justify our labelling such actions as "physical persecution".

■ Nor can the three-months prison sentence to which Blazina may be subjected as punishment for deserting his ship or his country illegally be termed physical persecution. The phrase "physical persecution" should be taken to mean confinement, torture or death inflicted on account of race, religion, or political viewpoint. Imprisonment for jumping ship does not come within this test, but seems rather to be a criminal sanction that is reconcilable with generally recognized concepts of justice.

■ Blazina's final contention is that the very fact of his desertion which itself indicates anti-communist feeling, and his anti-communist statements made since his arrival will be ground for his subjection to physical persecution if returned to Yugoslavia. This contention

---

5. The regulations relating to stays of deportation are contained in 22 Fed.Reg. 9798-9 (1957), 8 C.F.R. § 243.3(b).

poses a question the resolution of which is well within the province of the Attorney General. There is no evidence that in deciding it the delegates of the Attorney General disregarded the pertinent facts or the standard contained in the statute. On almost identical facts which, if different at all, presented stronger indication of political activity by the applicant and a greater possibility of physical persecution, the Court of Appeals for the Second Circuit reached the same result as we do here. See United States ex rel. Dolenz v. Shaughnessy, 2 Cir., 1952, 200 F.2d 288, certiorari denied, 1953, 345 U.S. 928, 73 S.Ct. 780, 97 L.Ed. 1358. See also United States ex rel. Miletic v. District Director of Immigration and Naturalization, D.C.S.D.N.Y.1952, 108 F.Supp. 719, and Obrenovic v. Pilliod, 7 Cir., 1960, 282 F.2d 874. Blazina attempts to distinguish these cases on the ground that the question of religious persecution does not seem to have been raised in them, but as we have pointed out there is no basis for finding physical religious persecution in the present case.

 Blazina has asserted in this court and it is not denied that after volunteering for the draft, he has been inducted into the Armed Forces of the United States. This added circumstance in Blazina's situation is one which was not and could not have been before the Attorney General. The court below and this tribunal are entitled to review that action of the Attorney General only on the basis of the record which was before him. Accordingly we cannot and do not discuss or deal with this aspect of the case. In view of Blazina's induction into the Armed Forces of the United States we will order our mandate stayed for a period of sixty days from the day of the filing of this opinion to permit Blazina to petition for certiorari or to file a new application under Section 243(h) based on his induction into the Armed Forces of the United States, or to allow him to do both.

Regrettably, we are compelled to comment on one other matter. The trial judge treated the Assistant United States Attorney who argued this case in the court below in an undeservedly harsh manner. It is important that judges be ever alert to their responsibility for upholding the dignity and prestige of our judicial system.

The judgment will be reversed. The court below will be directed to dismiss the complaint.