**Joso MILUTIN, Appellant**

v.

**E. P. BOUCHARD, District Director for the New Jersey District, Immigration and Naturalization Service.**

**No. 13651.**

United States Court of Appeals
Third Circuit.

Argued Dec. 7, 1961.

Decided Jan. 23, 1962.

Alfred W. Charles, New York City, for appellant.

Raymond W. Young, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before GOODRICH, STALEY and GANEY, Circuit Judges.

GOODRICH, Circuit Judge.

This is a deportation case. The plaintiff has sued the New Jersey District

Director of Immigration and Naturalization, seeking a judgment declaring that an order of deportation issued against him is void and asking an injunction restraining the defendant from executing the order. Summary judgment was granted against the plaintiff, who now appeals to this Court.

The situation is a not unusual one and has been before this Court previously. Blazina v. Bouchard, 3 Cir., 286 F.2d 507 (1961); Dunat v. Hurney, No. 13,-307, 3 Cir., 297 F.2d 744, 1962. The plaintiff is a citizen of Yugoslavia. He came into this country as a member of a crew of a ship. He overstayed his permitted shore leave and was subsequently apprehended and ordered deported.

At this point in the litigation it is undisputed that the plaintiff is a proper subject for deportation. His complaint is that, while he is subject to deportation, the Attorney General, through the regional commissioner, improperly denied him a stay of deportation under 8 U.S.C.A. § 1253(h). He is a Roman Catholic and he says that if deported to Yugoslavia he will be subject to physical persecution.

Argument for the plaintiff in this Court tends to stress the proposition that the plaintiff is, at this stage, entitled to the same sort of legal protection as though the problem were whether he is subject to deportation or not. The statute and regulations are clearly protective of the rights of the man who, it is claimed, is subject to being deported. The proceeding is as carefully guarded as any other piece of contentious litigation.[1]

The procedure outlined for a determination by the Attorney General or his delegate whether the alien, though subject to deportation, shall have the order of deportation withheld, is a different matter. The statute clearly vests the authority in the Attorney General.[2] Courts have repeatedly said that the favorable exercise of the Attorney General's discretion is not a matter of right but of grace. "[A] grant * * * [of an application for suspension of deportation] is manifestly not a matter of right under any circumstances, but rather is in all cases a matter of grace." Jay v. Boyd, 351 U.S. 345, 354, 76 S.Ct. 919, 924, 100 L.Ed. 1242 (1956).[3] The analogy constantly brought to bear is that of an appeal to a pardon board or a petition for probation by a prisoner convicted of a crime.[4]

1. The procedure for determining the deportability of an alien is set out in 8 U.S.C.A. § 1252(b) and regulations thereunder, 8 C.F.R. §§ 242.1–.21. The alien must be apprised of the specific charges against him, may have counsel present at the hearing, may present evidence, and may examine and cross-examine witnesses. Determinations of deportability "shall be made only upon a record made in a proceeding before a special inquiry officer," and must be "based upon reasonable, substantial, and probative evidence." The special inquiry office who presides at the hearing may not have participated in the investigative or prosecuting phases of the case. Judicial review of deportability decisions is contemplated by 8 U.S.C.A. § 1252(c).

2. "The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to physical persecution and for such period of time as he deems to be necessary for such reason." 8 U.S.C.A. § 1253(h).

3. Jay was a case involving the suspension, rather than, as here, the withholding, of deportation. Suspension proceedings are governed by the same regulations which prevail in proceedings to determine deportability. See 8 C.F.R. § 244.1 (Supp. 1961); note 1 supra. The regulations governing withholding of deportation are somewhat less stringent. See 8 C.F.R. § 243.3(b). Cases involving the withholding of deportation in which the language of the Jay decision is reiterated include Chao-Ling Wang v. Pilliod, 285 F.2d 517 (7th Cir. 1960); Cakmer v. Hoy, 265 F.2d 59 (9 Cir. 1959). See also United States ex rel. Kaloudis v. Shaughnessy, 180 F.2d 489, 491 (2d Cir. 1950) (L. Hand, J.).

4. See, e. g., Jay v. Boyd, 351 U.S. 345, 76 S.Ct. 919, 100 L.Ed. 1242 (1956); United States ex rel. Kaloudis v. Shaughnessy, supra note 3.

The deportable alien is not without rights. He has a right to have his application considered in accordance with the pertinent regulations promulgated by the Attorney General. Blazina v. Bouchard, supra, 286 F.2d at 511. And he has a right that his application not be denied capriciously. Ibid.; Cakmar v. Hoy, 265 F.2d 59, 61 (9 Cir. 1959). However, it is equally clear that the Government may rely upon information not presented or disclosed at the hearing, if disclosure would jeopardize the safety of the United States. This was exactly the holding in Jay v. Boyd, cited above. See also United States ex rel. Dolenz v. Shaughnessy, 206 F.2d 392 (2d Cir. 1953).

It is obvious in this case that the regional commissioner relied upon information not disclosed to the alien at the hearing.[5] However, there was no finding by the commissioner that disclosure would prejudice the security interests of the United States. The appellant insists that such a finding is a constitutionally necessary one if the information in the possession of the department is to be relied upon. Since his brief was written, a district court in California has so decided. Radic v. Fullilove, 198 F.Supp. 162 (N.D.Cal.1961). We do not agree. We think the present statute and regulations under it adequately assure the alien of that due process to which he is entitled. The pertinent regulation provides that the alien shall be interrogated under oath by a special inquiry officer; that he may present evidence to the officer; that he may have counsel present (as did the appellant); that the special inquiry officer shall make written findings and forward them to the regional commissioner; that the alien may submit written representations to the commissioner; and that the commissioner shall make his decision "upon consideration of all the evidence submitted by the alien and any other pertinent evidence or available information." 8 C. F.R. § 243.3(b)(2)(1958).

In this instance, the plaintiff has had a series of hearings.[6] The regional commissioner's final decision, dated August 26, 1960, reviews at considerable length and as thoroughly as would a court each contention made by the plaintiff tending to show that his case is a proper one for staying the order of deportation because of the danger of physical persecution. The final paragraph of the discussion by the regional commissioner states:

"This Service spent many months gathering factual information about conditions in Yugoslavia. Pending receipt of that information, Section 243(h) applications submitted by Yugoslav nationals were held in abeyance to avoid any possibility of deporting any person who might be physically persecuted. The information finally obtained was obtained from various sources, including the personal observations of officers of this Service in Yugoslavia. This information and all other available evidence has been carefully considered in this case and I must conclude that in my opinion the applicant will not be persecuted upon his return to Yugoslavia. His application will again be denied."

There is absolutely no indication in this case that the commissioner has not thoroughly considered the plaintiff's application or that he has denied it capriciously. This satisfies the requirements of due process in this situation.

5. See the final paragraph of the regional commissioner's decision, quoted in text infra.

6. Hearings on plaintiff's § 243(h) application were held on December 16, 1957, and on June 4, 1958, following which the application was denied by the special inquiry officer and the denial affirmed by the regional commissioner. After denial of an application for relief under 8 U.S. C.A. § 1255, proceedings on the plaintiff's § 243(h) application were reopened and a third hearing was held on July 8, 1960. Although on this occasion the special inquiry officer recommended that the application be granted, the regional commissioner did not accept the recommendation and the application was denied in a decision dated August 26, 1960.

Congress could, of course, have required more than the Constitution demands. As said above, the determination whether an alien is subject to deportation is guarded with considerable care. Similarly here, Congress could have precluded the use of undisclosed information absent a finding that disclosure would be harmful to the safety of the United States. But we do not think that a court should set up additional and more stringent rules here which the Congress has not prescribed. If it is necessary to make the finding that the appellant insists must be made, then it would follow that there could be a challenge to that finding as insufficient and a court examination of the exercise of a discretion which was, by the statute, granted to the Attorney General and not to the court.

It is altogether usual that courts should review the exercise of discretion by administrative officers. We do so constantly with the Labor Board, the Federal Trade Commission, and other administrative agencies almost too numerous to mention. When Congress wants that done, it says so and we go ahead and do it as best we can. But in the absence of a showing of arbitrariness or corruption we do not think we are entitled to set up requirements not provided for by Congress nor required by the Constitution.

The judgment of the district court will be affirmed.

STALEY, Circuit Judge (dissenting).

This court recently in Blazina v. Bouchard, 286 F.2d 507 (C.A.3), cert. denied, 366 U.S. 950, 81 S.Ct. 1904, 6 L.Ed.2d 1242 (1961), held that a court may review a refusal to grant a stay to determine whether the application was denied arbitrarily or capriciously. We subsequently reaffirmed that in Dunat v. Hurney, No. 13,307, 3 Cir., 297 F.2d 744 (1962). Today the court is abdicating even that limited function. It does this on the basis that the Attorney General has unfettered discretion, and analogizes it to that exercised in pardon board or probation proceedings, following what was said in Jay v. Boyd, 351 U.S. 345, 76 S.Ct. 919, 923, 100 L.Ed. 1242 (1956). In that case, the Supreme Court, in a five to four decision, upheld the action of the Attorney General in the use of undisclosed confidential information, only however after a finding that a disclosure "would be prejudicial to the public interest, safety or security." I shall refer to this case later.

In the instant case, the special inquiry officer found that appellant would be physically persecuted for his political and *not religious* beliefs if he were returned to Yugoslavia, and he recommended that a stay of deportation be entered. The regional commissioner, relying exclusively on information not put into the record and not disclosed to appellant, refused to enter a stay. At oral argument, the government conceded the action of the regional commissioner would have been "arbitrary or capricious" if it had been predicated solely upon the evidence disclosed in the record, but since it was based upon undisclosed information, it was not arbitrary or capricious. Thus, we are now squarely faced with the question of whether a stay of deportation may be withheld solely upon the basis of undisclosed information.[1] The majority of the court answers this question in the affirmative. With due deference to the views of my colleagues, I must respectfully dissent.

1. Nowhere in the record or in the government's brief does it appear that the undisclosed information was confidential. It has never been intimated that the failure to disclose was necessitated by overriding considerations of national safety as was true in Jay v. Boyd, 351 U.S. 345, 76 S.Ct. 919, 100 L.Ed. 1242 (1956). The government has never offered to make the undisclosed information available to the appellant, his counsel, the district court, or to this court. It has never been claimed that the source of the undisclosed information must be protected or that any peculiar factors require secrecy. No reason is offered in an attempt to explain why the information remains undisclosed.

It is anomalous to say that we have the function and therefore the duty to review administrative action to determine whether it was arbitrary or capricious, and at the same time limit our review to evidence disclosed on the record but which admittedly was not the basis for the decision of the administrative agency. It seems to me that the net result is that we have no power to review at all in those cases where the Attorney General or his delegated officer incorporates in his report the magic ritualistic formula that he has "considered all other pertinent evidence or available information" and does not disclose it. Thus, we are today permitting the Attorney General to define and limit our jurisdiction. This, however, can only be done by Congress, and Congress has not done so.

I do not interpret § 243(h) to grant the Attorney General unfettered discretion. True enough, in the Jay case the Court held that he had such discretion under § 244. That, however, is not the section with which we are concerned. In that case the Supreme Court pointed to the language of § 244 that the Attorney General may "in his discretion" suspend deportation. This language does not appear in § 243(h). Furthermore, in § 244, as noted by the Supreme Court at 351 U.S. 353, 76 S.Ct. 924, 100 L.Ed. 1242, " * * * Congress did not provide statutory standards for determining who, among qualified applicants for suspension, should receive the ultimate relief." Here, Congress clearly provided such a standard, and if the Attorney General has misapplied it, his action is subject to review. Blazina v. Bouchard, supra; Dunat v. Hurney, supra. The standard provided in § 243(h) is that the Attorney General "is authorized to withhold deportation of any alien within the United States to any country in which in his opinion *the alien would be subject to physical persecution * * *.*" Thus, it is clear that the controlling standard for action by the Attorney General is whether or not the alien would be subject to physical persecution. The use of the words "in his opinion" means nothing more than that he is to exercise his informed judgment in making that determination, and that judgment must be based on evidence that is in the record; otherwise there could be no review of that judgment even though it be arbitrary or capricious, Blazina v. Bouchard, supra, and even though it be contrary to the clear statutory standard, Dunat v. Hurney, supra. If the statutory standard has been met, the Attorney General has no discretion to withhold a stay. Section 243(h) was preceded by § 20 of the Immigration Act of 1917, as amended in 1950, which in 8 U.S.C. § 156, provided: "No alien shall be deported under any provisions of this chapter to any country in which the Attorney General shall find that such alien would be subjected to physical persecution." That provision made it clear that the Attorney General had to make a finding, and if the record supported a claim that the alien would be subjected to physical persecution, withhold deportation. Enactment of § 243(h) did not work a change in this regard. Its Congressional history supports that conclusion. In the committee report that accompanied it through Congress, it was stated:

> "The bill continues the provision in existing law to the effect that no alien *shall be deported* to any country in which the Attorney General *finds that he would be subjected to physical persecution.*" (Emphasis supplied.) 2 U.S.Code Cong. & Adm.News, 82d Cong., 2d Sess., 1952, p. 1715.

The Ninth Circuit recently decided the case of Chi Sheng Liu v. Holton, Dec. 14, 1961, 297 F.2d 740. It there held that the Attorney General's finding of nonpersecution in a § 243(h) case was judicially reviewable. It was there said:

> " * * * Therefore, we conclude that while the Attorney General is invested with wide discretion, an alien is entitled to a suspension of deportation if he can establish that the exercise of this discretion was.

not based on a reasonable foundation."

For these reasons, I would reverse the judgment of the district court, with directions to stay the deportation.