Janis Osvald DOMBROVSKIS, Tomislav Dragoievich, Bozidar Dunich, Ernest Vilhelms Elerts, Nikolo Grancaric, Sime Grancaric, Joso Grando, Mate Gregov, Krizan Ivanov, Slavko Jezina, Ljubo Komadina, Ivan Latkofic, Cesar Malesic, Sime R. Martinovich, Sime Matesix, Joso Patrk, Svetko Petric, Ante Spaleta, Pere Stojak, Giovanni Stroligo, Sime Telac, Joseph Zuzich and Frank Pavlak, Plaintiffs,

v.

P. A. ESPERDY, District Director, Immigration & Naturalization Service, United States Department of Justice, Defendant.

United States District Court
S. D. New York.

Oct. 4, 1962.

Edith Lowenstein, New York City, for plaintiffs.

Robert M. Morgenthau, U. S. Atty., for defendant; Roy Babitt, Special Asst. U. S. Atty., of counsel.

FREDERICK van PELT BRYAN, District Judge.

Plaintiffs are alien seamen, nationals of Yugoslavia, now in this country, who are admittedly deportable as temporary entrants who overstayed the period allowed them for shore leave.[1] In this action

---

1. The action was originally commenced by twenty-two plaintiffs. With defendant's consent Frank Pavlok was added as the twenty-third plaintiff. Since then discon-

for a declaratory judgment they seek review of orders of the Attorney General denying their applications for withholding of deportation under § 243(h) of the Immigration and Nationality Act (8 U.S. C.A. § 1253(h)).[2]

The complaint as finally amended alleged two claims for relief. The first involved the denial of plaintiffs' applications for classification as refugee-escapees under § 15(a) (3) of the Act of September 11, 1957, 71 Stat. 639. In June, 1960 defendant's motion for summary judgment dismissing this claim was granted by Judge Dimock for failure to join an indispensable party and thus has been finally disposed of. Dombrovskis v. Esperdy, 185 F.Supp. 478 (S.D.N.Y. 1960).

Plaintiffs' second and remaining claim for relief, which was tried before me without a jury, is directed to the denial of their several applications to the Attorney General under § 243(h) to withhold deportation, each claiming that he would be subject to physical persecution if returned to Yugoslavia.

Plaintiffs assert that their applications were denied because, as a matter of policy, the Attorney General, through the Immigration and Naturalization Service, had determined to exclude alien seamen as such, and particularly Yugoslav seamen, from the benefits of § 243(h) without any consideration of the merits of their individual claims that they would be subject to physical persecution if returned to their native lands. It is their position that their applications were prejudged and denied without a fair consideration of the merits solely because they were Yugoslav seamen.

When Judge Dimock granted defendant's motion for summary judgment dismissing the first claim for relief he denied a similar motion directed to the second claim without prejudice to renewal in order to give plaintiffs an opportunity to take further depositions and complete their discovery. Plaintiffs then took the depositions of five officials of the Service and were given access to files relating to their cases and also relating generally to withholding deportation on grounds of persecution. Defendant then renewed his motion for summary judgment before Judge Dimock and the plaintiffs cross-moved for summary judgment. See Dombrovskis v. Esperdy, 195 F.Supp. 488 (S.D.N.Y.1961).

After a comprehensive review of the extensive record before him Judge Dimock denied plaintiffs' cross-motion for summary judgment. He found that plaintiffs had failed to show that there was any policy of the Attorney General or the Service which resulted in a prejudgment of their cases without consideration of the merits, but that, on the contrary, "the record in the case of each plaintiff, without the aid of any presumption against a crewman, amply supports the finding that the plaintiff has failed to establish that he will be subject to physical persecution." (195 F.Supp. at p. 496.)

However, Judge Dimock also denied the defendant's motion for summary judgment on the ground that he could not then say that plaintiffs might not be able to establish their claim upon a trial.

In this posture the case came on for trial before me.

The sole issue before me was whether the plaintiffs had been denied relief under § 243(h) as a result of a policy to deny such relief to alien seamen in general or Yugoslavian seamen in particular and thus to preclude them from the benefits of the section without fair hearing and

tinuances have been entered as to plaintiffs Dunich, Elerts, Jezina, Komadina, Matesic, Patrk and Stojak. There are therefore sixteen plaintiffs remaining.

2. 8 U.S.C.A. § 1253(h)—The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to physical persecution and for such period of time as he deems to be necessary for such reason.

without a fair consideration and determination of their application on the merits.

Judge Dimock's two previous opinions in this case discuss the nature, background and basis of the plaintiffs' claims and the law applicable thereto very thoroughly. There is no need to go over that ground at length here.

As Judge Dimock pointed out in his second prior opinion in this case (195 F. Supp. 488, at p. 489):

"The scope of judicial interference with the Attorney General's denial of stays of deportation is limited to cases where the alien has been denied procedural due process, or has not been afforded fair consideration of his application. E. g., United States ex rel. Leong Choy Moon v. Shaughnessy, 2 Cir., 218 F.2d 316; see United States ex rel. Dolenz v. Shaughnessy, 2 Cir., 206 F.2d 392. A claim that plaintiffs' applications were prejudged on the basis of their status as crewmen would, if substantiated, warrant a conclusion that the applications had not been fairly considered. Plaintiffs have failed, however, to substantiate their claim."

See, also, Diminich v. Esperdy, 299 F.2d 244 (2 Cir. 1961), cert. den. 369 U.S. 844, 82 S.Ct. 875, 7 L.Ed.2d 848; Blazina v. Bouchard, 286 F.2d 507 (3 Cir. 1961), cert. den. 366 U.S. 950, 81 S.Ct. 1904, 6 L.Ed.2d 1242; Batistic v. Pilliod, 286 F. 2d 268 (7 Cir. 1961), cert. den. 366 U.S. 935, 81 S.Ct. 1660, 6 L.Ed.2d 847; United States ex rel. Dolenz v. Shaughnessy, 200 F.2d 288 (2 Cir. 1952), cert. den. 345 U.S. 928, 73 S.Ct. 780, 97 L.Ed. 1358.

The administrative procedure to be followed by an alien seeking relief under § 243(h) is prescribed by regulation (8 CFR § 243.3(b)(2)). After making application for a stay the alien is required upon notice to appear before a special inquiry officer for interrogation under oath. The alien may be represented by an attorney or other person authorized to practice before the Service and he may submit any evidence to the special inquiry officer which he believes will support his claim. The special inquiry officer is then required to prepare a written memorandum of his findings and to recommend whether or not the relief sought should be granted. The findings and recommendation, together with all the evidence submitted by the alien, is then forwarded to the regional commissioner who is responsible for making the final determination.

The regulation requires that the alien be served with a copy of the memorandum and recommendation of the special inquiry officer and he may, within five days, submit written representations to the regional commissioner. The regional commissioner's decision is final, and no further administrative appeal is available.[3]

Plaintiffs base their claims on a series of events going back to 1956. At that time the Commissioner of Immigration issued an order deferring final action on all applications of Yugoslav nationals for § 243(h) relief. This was done for the express purpose of obtaining facts concerning physical persecution by the Yugoslav government of persons whose circumstances were somewhat similar to these plaintiffs. In April, 1958, the results of the inquiry were set forth in a decision and opinion denying a § 243(h) application of a Yugoslav crewman named Kale. The Kale decision was forwarded to all regional commissioners with a letter directing them to commence the processing of all pending applications of Yugoslav nationals according to the procedures of 8 CFR § 243.3(b)(2). Under the terms of the letter memoranda and recommendations were to be pre-

3. It should be noted that the administrative procedure in cases of this nature was changed on Dec. 19, 1961. 26 F.R. 12113. Under the amendment, effective Jan. 22, 1962, adjudicatory power was given to the special inquiry officer with an appeal to the Board of Immigration Appeals. See discussion in Foti v. Immigration and Naturalization Service, 308 F. 2d 779 (2 Cir. 1962).

pared by the special inquiry officers only on applications by crewmen.[4] The letter further directed that the decisions were to be made "based upon the criteria set forth in" the Kale decision. The substance of this letter was then communicated by the regional commissioner for the northeastern region to all of his district directors, including defendant.

The various applications of plaintiffs then came on for hearing before special inquiry officers. Each of the plaintiffs was given a full hearing before the officer who reported to the regional commissioner. The various special inquiry officers recommended denial of the relief sought to all but one of the plaintiffs and the regional commissioner adopted their recommendations for denial. In the case of plaintiff Stroligo the recommendation of the special inquiry officer for the grant of a stay of deportation was not followed by the regional commissioner who denied the relief sought and stated his reasons therefor in writing.

In essence the plaintiffs' claim here is that the Kale decision was a policy directive which required the denial of all applications for 243(h) relief by Yugoslav crewmen regardless of the merits of each individual case. They urge, therefore, that despite the hearings they were afforded, the decisions rendered were a foregone conclusion based upon directions of the Commissioner of Immigration.

The Kale decision, the directives concerning it, and the records before the special inquiry officers and before the regional commissioner were before Judge Dimock, and the Kale decision and directives are set forth in full in his opinion. (195 F.Supp. at pp. 491–492.) Judge Dimock found that the Kale decision "was issued as a precedent on the meaning of persecution in the cases of Yugoslav nationals, just as a decision of the Supreme Court is designed to have general application in cases involving similar facts before lower federal courts." (195 F.Supp. p. 493.) He found further that the decision had established general guidelines which were useful in considering applications of those similarly situated and he specifically found that plaintiffs' evidence failed "to create any inference that the Kale decision was either calculated to, or did in fact, elicit slavish adherence to a policy of denying all stays of deportation to Yugoslav crewmen." (195 F.Supp. p. 493.) He made the further finding that "the records of plaintiffs whose applications were denied contained substantial evidence upon which findings could be made that their cases fell squarely within the ambit of Kale." (195 F.Supp. p. 493.)

All of these findings and the conclusions that plaintiffs had failed to establish any ground for the relief they sought in this action, were fully supported by the evidence before Judge Dimock. Such additional proof as tne plaintiffs offered at trial failed completely to sustain their claims or to furnish any basis for changing the findings and conclusions which he had reached. In fact, the evidence at the trial supports the defendant's position that the decisions as to each of these plaintiffs were based on the merits of each individual case after a fair and impartial hearing.

Plaintiffs called only two witnesses. The first was Giovanni Stroligo, one of the plaintiffs, whose testimony was very brief. He conceded that at all times the special inquiry officer who conducted his hearing was polite and attentive, and allowed him to testify fully in his own behalf.

Objections taken to attempts by plaintiffs' counsel to go into the merits of Stroligo's claimed fear of physical persecution were sustained since I deemed this line of inquiry to be irrelevant and immaterial to the sole issue to be tried— whether the plaintiffs had been denied procedural due process or had not been afforded fair consideration of their application.

---

**4.** Eight months after this letter was sent the regional commissioners were directed to prepare findings, recommendations and decisions on pending § 243(h) applications of Yugoslav nationals who were not crewmen.

Plaintiffs' only other witness was Irving Novick, an immigration consultant admitted to practice before the Immigration Service. Novick had been retained by almost all of the plaintiffs to represent them in the § 243(h) hearings before the Service.

Novick testified that after the Kale decision was handed down the plaintiffs were advised that the stays of proceedings in their cases were lifted and that they would receive hearings. New hearings were then commenced in each case. The witness testified that at these hearings he and the plaintiffs were given full opportunity to present all of their evidence. The special inquiry officers who heard the applications then prepared written memoranda of their findings and made their recommendations to the regional commissioner. In every case, but one, that of Stroligo, the recommendations were to deny 243(h) relief. The regional commissioner followed all the recommendations except in the Stroligo case where he disagreed and stated his reasons for denying the application in a written decision.

Novick had no personal knowledge of any policy to exclude seamen from 243 (h) relief and his direct testimony indicated that in each case the applicant received a full opportunity to be heard on the merits.

On cross-examination Novick testified that three of the original plaintiffs, as to whom discontinuances have been filed, have now received non-quota visas as refugee-escapees under § 15(a) (3) of the Act of 1957. All three were crewmen whose 243(h) applications had been denied previously.

Novick further testified that prior to the commencement of this litigation he did not at any time make the claim before the Service or the regional commissioner that there was a policy requiring denial of relief to Yugoslav crewmen or any bias against them.

At that stage of the trial plaintiffs applied to the court for a subpoena requiring the regional commissioner to appear as a witness. This application was denied on the ground that the commissioner resided and had his office at a place more than 100 miles outside this district and therefore was beyond the range of the subpoena power of this court. However, over strenuous objection by defendant, I permitted plaintiffs to take the regional commissioner's deposition on written interrogatories and continuance was granted for that purpose.

When the trial was resumed plaintiffs' counsel did not offer in evidence the deposition of the regional commissioner. It was offered by defendant and received as part of defendant's case.

Plaintiffs did place in evidence the depositions of defendant Esperdy, Edward Loughran, Associate Commissioner and Manager of the Immigration and Naturalization Service, Edward Morgan, Assistant Commissioner of the Service in charge of Detention and Deportation, and Reuben Speiser, a Special Inquiry Officer.

The testimony of these witnesses on deposition lends no support to plaintiffs' claim that there was a policy requiring denial of 243(h) applications by Yugoslav crewmen. On the contrary, the depositions indicate that the Service made a careful investigation of conditions in Yugoslavia and that the general conclusions as a result of this study were published in the Kale decision, providing special inquiry officers and regional commissioners with criteria to aid in the evaluation of specific claims of fear of physical persecution by individual applicants. There is not the remotest inference to be drawn in any of this testimony to the effect that the result in Kale was expected to be, or was in fact, applied arbitrarily or across the board in all cases involving Yugoslavian crewmen.

The remainder of plaintiffs' proof was documentary, consisting mainly of interagency communications and correspondence between the plaintiffs and the Service. None of this material in any way supports plaintiffs' claim.

The defendant's proof was most persuasive. The files kept by the Service on each of these plaintiff's applications under § 243(h) were received in evidence over plaintiffs' objection that they were irrelevant. These files are most enlightening. In each there is the transcript of the hearing before the SIO, his initial memorandum and recommendation, the statement by the applicant in opposition, and the final decision by the regional commissioner. These files amply support the conclusion that these applicants were given full and impartial hearings and that the records before the Service support the final decisions rendered.

The answers on deposition of Charles Davie, Regional Commissioner for the Northeast Region, are of considerable significance. In his official capacity he was required to make the final decision on all 243(h) applications for this region. His testimony shows that in rendering decisions he considered the facts as presented on the record, together with all available information on conditions within the country of the alien's origin. He testified that the Kale decision was not regarded as a precedent in the case of all Yugoslav crewmen, but solely as a guide in evaluating the circumstances of each applicant in each particular case. He indicated that where the record showed that an applicant's position was the same as or similar to Kale's, his decision would necessarily be the same. However, he specifically stated that he followed the guidelines of Kale "if they are applicable, but I do not follow the Kale decision if the facts of the case under consideration render it inapplicable." He further stated that he had, on occasion, granted applications by Yugoslavian crewmen for withholding of deportation under § 243 (h).

Finally, defendant called Fred McCleskey, regional deportation officer for the Northeast Region. In his official capacity McCleskey reviewed applications and files in § 243(h) cases and prepared drafts of decisions for the regional commissioner. He testified that he considered the entire file and all information the Service had available on the conditions in the country to which the alien is being deported. He emphatically stated that there has never been a policy to deny § 243(h) to crewmen and he has never seen a memorandum or statement in the Service's files establishing such a policy. On cross-examination it was brought out by plaintiffs' counsel that the witness knew of at least two instances where deportation was withheld under § 243(h) in cases involving Yugoslavian crewmen.

It is apparent that plaintiffs have wholly failed to adduce any proof which supports their claims. Their sole remaining contention that the high percentage of denials of 243(h) relief to Yugoslav crewmen proves their point is without merit. Evidence has been presented which shows that in at least two cases Yugoslav crewmen have been successful in getting such relief and that in some cases § 15(a) (3) relief has been granted. This in itself tends to negative the existence of a general policy against relief to Yugoslav crewmen. Furthermore, even without this, the denial of this relief to all persons similarly situated would not be sufficient to meet plaintiffs' burden, in the light of defendant's proof that the application of each plaintiff was considered on its individual merits after a full hearing given to each applicant.

I find therefore that the plaintiffs have failed to substantiate their claims that any of them have been denied procedural due process or have not been accorded fair and impartial consideration of their applications. I find that their applications were not prejudged because they were Yugoslav seamen, that they were given a full and fair hearing on the merits, and that the decisions denying them relief were supported by substantial evidence.

The defendant is therefore entitled to judgment dismissing the complaint and judgment will be entered accordingly.

This opinion constitutes my findings of fact and conclusions of law pursuant to Rule 52, F.R.Civ.P., 28 U.S.C.A.

It is so ordered.