MATTER OF LIADAKIS

In DEPORTATION Proceedings

A-15477411

*Decided by Board April 18, 1963*

Physical persecution within the meaning of section 243(h), Immigration and
Nationality Act, has not been established by a native and citizen of Greece
on the basis of a claim of prosecution or other official opposition which might
result from his religious activities (proselytism) in Greece as a Jehovah's
Witness.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Remained
longer.

Respondent, a native and national of Greece who last entered the
United States on July 15, 1960 as a nonimmigrant crewman, is 23
years old and married to a citizen of the United States. He concedes
deportability as charged.

At the original hearing the special inquiry officer directed deporta-
tion to Germany, the country elected by respondent, with an alternate
order of deportation to Greece. Respondent did not have counsel at
that hearing but subsequently appealed through his present counsel.
That appeal sought an adjudication of respondent's eligibility for
withholding of deportation under section 243(h) of the Immigration
and Nationality Act, although no application for such relief had been
filed. Our order of July 11, 1962 directed reopening of the proceed-
ings to afford respondent an opportunity to apply under the provisions
of that section and to submit supporting evidence.

The special inquiry officer, after further hearing, denied respond-
ent's application for withholding of deportation and again ordered
deportation to Germany or alternatively to Greece. Respondent
appeals from the denial of the benefits of section 243(h). We concur
in the conclusion of the special inquiry officer.

Respondent testified that since arriving in this country he has
become a member of Jehovah's Witnesses. Communications from

252

ministers of that sect corroborate such membership. The record contains a letter to respondent and his wife from the presiding minister of Jehovah's Witnesses in Greece, which *inter alia* states that section 1 of the Greek Constitution provides that the dominant religion in Greece is the Eastern Orthodox Church of Christ, that any other religion is free to perform its worship rites without hindrance under the protection of the laws, but proselytism and any other interference with the dominant religion is forbidden. A letter to respondent's wife from the Watchtower Bible and Tract Society sets forth that certain members of the Jehovah's Witnesses in Greece have been charged with proselytism and punished with imprisonment of up to five months and fines. A number of other Witnesses are reported to have been brought before the courts during the periods September through November 1961 and February through April 1962, but discharged.

Respondent indicates that if returned to Greece he would go from door to door interpreting the Bible and delivering literature setting forth the tenets of Jehovah's Witnesses. He maintains that he would be subject to imprisonment for such activities.

Respondent's counsel contends the special inquiry officer erred as a matter of law by failing to recognize that, under judicial and administrative precedents confinement on religious grounds constitutes physical persecution within the meaning of the statute. *Blazina* v. *Bouchard*, 286 F. 2d 507 (C.A. 3, 1961) cert. den. 366 U.S. 950 (1961); *Kalatjis* v. *Rosenberg*, 305 F. 2d 249 (C.A. 9, 1962); *Diminich* v. *Esperdy*, 299 F. 2d 244 (C.A. 2, 1961) cert. den. 369 U.S. 844 (1962), which refers to *Matter of Kale*, A–9555532 (1958). As we read the special inquiry officer's opinion, however, he does not rule out as a matter of law confinement on religious grounds as a possible instance of physical persecution. The special inquiry officer notes that the general freedom of religion in Greece is subject only to the limitation that proselytism for faiths other than the Eastern Orthodox is forbidden. He notes also that respondent expects, if deported to Greece, to engage as a Jehovah's Witness in proselytism and to be arrested and possibly prosecuted in the courts for such proscribed activity. We consider the special inquiry officer ruled only that under these particular circumstances the arrest and confinement to which respondent may be subject would not constitute physical persecution despite the religious issue.

In this country the proselytizing activities of Jehovah's Witnesses are held in general to come within the protection of the constitutional guarantees of freedom of religion, speech, and the press. *Lovell* v. *Griffin*, 303 U.S. 444 (1938); *Murdock* v. *Commonwealth of Pennsyl-*

*vania,* 319 U.S. 105 (1943) ; *Martin* v. *Struthers,* 319 U.S. 141 (1943) ; *Nietmotko* v. *Maryland,* 340 U.S. 268 (1951). These rights are not absolute however. *Schneider* v. *Irvington,* 308 U.S. 147 (1939). A few cases have upheld particular applications of the police power restricting such rights. *Cox* v. *New Hampshire,* 312 U.S. 569 (1941) ; *Chaplinsky* v. *New Hampshire,* 315 U.S. 568 (1942) ; *People* v. *Bohnke,* 287 N.Y. 154, 38 N.E. 2d 478 (1941), cert. den. 316 U.S. 667 (1942). The Supreme Court has said that the First Amendment has two aspects—freedom to believe and freedom to act, the first being absolute but the second subject to regulation for the protection of society. *Cantwell* v. *Connecticut,* 310 U.S. 296, 303, 304 (1940).

The Court ruled in *Murdock* that a nondiscriminatory tax on distribution of literature was invalid when applied against Jehovah's Witnesses. *Martin* v. *Struthers* invalidated an ordinance forbidding knocking on the door or ringing the doorbell of a residence in order to deliver a handbill as applied against handbills distributed on behalf of Jehovah's Witnesses. In *Nietmotko* denial of a request by Jehovah's Witnesses for a permit to hold a meeting in a public park was overruled where the denial appeared to be based not upon any valid exercise of the police power but upon arbitrary action on the part of the local officials.

On the other hand, in *Cox* v. *New Hampshire* a statute requiring a permit and license fee for parades was held valid in a case involving Jehovah's Witnesses. *Chaplinsky* v. *New Hampshire* upheld a state statute applicable only to the use in a public place of words directly tending to cause a breach of the peace. The speaker was a Jehovah's Witness who had been engaged in distributing literature of his sect on the street and addressing passers-by. He used the inflammatory words against the City Marshall after a disturbance broke out. *People* v. *Bohnke* upheld an ordinance which prohibited, without prior consent of the occupants, entry by nonresidents of the community upon private residential property for certain purposes, including the distribution of pamphlets or other literature. Appellants were nonresident Jehovah's Witnesses distributing religious information.

Thus in this country the right of Jehovah's Witnesses to proselyte is not without limitation. In Greece, however, that right appears to be nonexistent. Counsel for respondent urges us to adopt the standards in this country in determining whether the action of the Greek authorities against Jehovah's Witnesses constitutes physical persecution. Although at times particular aspects of questions arising under section 243(h) should be considered in the light of the standards in this country rather than those in the country in question, we do not believe the statute contemplates that unless aliens will enjoy within their own country the same type, degree, and extent of religious

and individual freedom they enjoy here deportation may be withheld on the grounds of impending physical persecution. Wherever possible, consistent with the purposes of the statute, considerable latitude should be extended to the foreign law. The Court of Appeals for the Third Circuit in *Blazina* v. *Bouchard* (*supra* at 511, cited by respondent's counsel for another proposition) indicated that repugnance of a governmental policy to our own concepts of religious freedom cannot in itself justify our labeling actions taken under that policy as "physical persecution."

The record does not reveal the specific facts underlying individual instances of prosecution in Greece of Jehovah's Witnesses. The letter from the Watchtower Bible and Tract Society describes only in a general way such prosecutions. It says that the members of the sect were charged with talking about the Bible to others or getting together in their own homes to discuss the Bible, and that, in some cases, false charges were brought against Witnesses who had done nothing. The Presiding Minister in Greece describes two convictions naming the Witnesses involved. Each received a fine of 2000 drachmas and probation for six months for displaying their religious literature plus imprisonment of two and a half months in one case and one month in the other. The particular circumstances upon which the prosecutions were based do not appear, however.

We have considered the evidence in the light most favorable to respondent, assuming that the Jehovah's Witnesses in Greece who encountered police opposition were engaged in activities generally protected in this country and that prosecution under the Greek constitutional provision of members of the sect is widespread. We note, however, that the affidavit of a member of the sect resident in this country, formerly a Jehovah's Witness in Greece, alleges repeated persecution and hunting out by the police there—but refers only to one instance of actual imprisonment which lasted about 30 hours. As previously noted, the maximum other imprisonments described in the record were for about five months. Looking at the general situation as revealed by this record of Jehovah's Witnesses in Greece vis-a-vis Greek law, including the extent of the sanctions imposed by the authorities, we agree with the special inquiry officer's conclusion that any prosecution or other official opposition which might result from respondent's religious activities in Greece would not fall within the purview of section 243(h) of the Immigration and Nationality Act. We shall dismiss the appeal.

ORDER: It is ordered that the appeal be and hereby is dismissed.