## MATTER OF EUSAPH

### In DEPORTATION Proceedings

### A-12049409

*Decided by Board January 23, 1964*

Respondent has not established that because a political disagreement exists between the Governments of Pakistan and India on the territorial question of Kashmir, he would be subject to physical persecution within the meaning of section 243(h), Immigration and Nationality Act if deported to India, a predominantly Hindu country, since he is a native of Pakistan and a Moslem.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant (crewman)—Remained longer.

The special inquiry officer, in a decision dated October 2, 1963: (1) found the respondent ineligible for voluntary departure; (2) directed his deportation from the United States to India on the charge contained in the order to show cause; and (3) denied his application for temporary withholding of deportation to India. The appeal from that decision, which brings the case before this Board for consideration, will be dismissed.

The record relates to a male alien, approximately 47 years of age, who asserts that he is a native and citizen of Pakistan. He last entered the United States on or about May 26, 1957. He was then admitted as a nonimmigrant crewman for the period of time his vessel was to remain in port, but in no event to exceed 29 days. He has remained in this country since the expiration of the temporary period of his admission without authority.

The foregoing establishes the respondent's deportability on the charge set forth in the order to show cause, and this is conceded. The respondent has stated that he will not leave the United States voluntarily so that the special inquiry officer properly found him ineligible for voluntary departure, and this finding is unchallenged. The country of deportation designated by the respondent (British Guiana) and the country of his asserted nativity and citizenship (Pakistan) have

453

both refused to issue documents for the respondent's admission thereto, and the Service has submitted evidence of the willingness of India to issue an emergency certificate valid for the respondent's deportation to that country; so that the procedural aspects of the case on this point require no further comment. Thus, the only issue presented for our consideration is whether the special inquiry officer's denial of the respondent's application for temporary withholding of his deportation to India constituted an abuse of discretion. Our answer is in the negative, for the reasons hereinafter set forth.

Generally speaking, physical persecution, the likelihood of which authorizes a stay of deportation under this section of the law, means confinement, torture, or death inflicted on account of race, religion or political viewpoint (*Blazina* v. *Bouchard*, 286 F. 2d 507). The main thrust of the respondent's argument here is that he will be subjected to persecution in India, which is predominantly Hindu, because he is a native of Pakistan and a Moslem. Specifically, he bottoms his claim on the fact that there is a political disagreement between the Governments of Pakistan and India on the territorial question of Kashmir, and that he will be persecuted because of this.

The respondent has been unable to furnish any documentary evidence to support his claim (Ex. R-2). It is patently general in nature rather than on an individual basis. The "press releases" on which he relies are general in nature and deal solely with the general disagreement between the governments of Pakistan and India over Kashmir. He has made no claim or showing that the Government of India is engaged in a program of persecuting individuals who are Pakistanians and Moslems. There is no showing that the Government of India tolerates violence by Hindu Indians against Pakistanian Moslems, either individually or collectively, and that the police powers of the government have degenerated to the point where it is unable to take proper measures to control individual cases of violence in this respect which arise. The reports of various committees of the Congress to which counsel referred in the course of oral argument relative to a dispute between Pakistan and India are, from his very observations, concerned solely with the broad problems involved rather than the individual cases of aliens such as the one now under consideration. Accordingly, we find the respondent's general allegations in this respect do not meet the burden resting upon him to establish persecution (*Matter of B—*, A-15804394, BIA, 8/28/63; Int. Dec. #1298).

It has also been judicially determined that economic proscription so severe as to deprive a person of all means of earning a livelihood may amount to physical persecution (*Dunat* v. *Hurney*, 297 F. 2d 744; and *Soric* v. *Flagg*, 303 F. 2d 289). However, we do not think that

the record supports the respondent's contention that his case comes within the scope of the courts' rulings in this respect.

According to the record, the respondent proceeded from Pakistan to Bombay, India, when he was about 16 years of age, in 1931. From then until 1942 he worked in the ship yards of Bombay. Thereafter, and until 1956, he sailed as a crewman, signing on and off at Bombay, India. The respondent's past record, then, does not support his present claim, and he advances no good reason why the situation would be different after his return to India than it was prior to 1956. As a matter of fact, he admitted that if the Indian consulate had granted him documents to enter India in 1960 he would have willingly and voluntarily returned there. Under these circumstances, we do not think that the respondent's claim to persecution in this respect is supported.

This same factor negatives the respondent's argument that he would be physically persecuted because prior to 1956 and subsequent to India acquiring its independence some people hit him and told him to go back to Pakistan. Again, in this connection, there is no evidence of record that conduct in this respect is the result of a program sponsored or tolerated by the Government of India, or resulting from incidents by Indians, individually or collectively, which the Government of India condones.

We find completely lacking in merit the respondent's assertion that his life would be endangered if he returned to India because approximately two years ago, when he was detained by the Immigration Service, he called the Indian consulate and was told that as a Pakistanian the Indian Government would have nothing to do with him. In the first place, it is only natural that the Indian Government would be concerned with its own natives and nationals. Secondly, any adverse inference which the situation might otherwise have given rise to is negatived by the fact that India has now evidenced its willingness to issue the respondent an emergency certificate valid for his deportation thereto. Thirdly, the special inquiry officer, who had the benefit of observing the respondent, was of the opinion that he was willing to make any rash declaration which would suggest the possibility of his continued presence in this country; and counsel in the course of oral argument characterized some of the respondent's statements as "incoherent and unintelligible." (par. 1)

Finally, respondent's contention concerning adverse living conditions in Bombay may explain his desire to remain in this country where living standards are better. However, this is not dispositive of the issue presented.

ORDER: It is ordered that the appeal be dismissed.

455